## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **SPEEDEON DATA, LLC,** | ) | **CASE NO.1:15CV1272** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **INTEGRATED DIRECT MARKETING** | ) | **OPINION AND ORDER** |
| **LLC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Integrated Direct Marketing, LLC.'s Motion to Dismiss for Lack of Personal Jurisdiction (ECF # 8).  For the following reasons, the Court denies Defendant's Motion.

According to Plaintiff's Complaint Speedeon Data, LLC ("Speedeon") is an Ohio based company that collects and processes consumer data for use in direct marketing programs.  Defendant Integrated Direct Marketing, LLC. ("IDM") is a Connecticut limited liability company with its principal place of business in Reston, Virginia.  IDM collects and processes consumer data.  Speedeon alleges IDM collects data from other data collection sources such as Speedeon, aggregates the third party data and sells it to retailers.

According to Plaintiff's Complaint, in August of 2011, an employee of Home Depot contacted IDM requesting IDM obtain consumer data from Speedeon, process it and provide it to Home Depot.  IDM contacted Speedeon and requested Speedeon's data collection services.  On September 25, 2012, Speedeon and IDM entered into an agreement referred to as the Home Depot Statement of Work, wherein Speedeon agreed to provide data to IDM for

its Home Depot Mover Program in exchange for payment for such data.  Later, on July 2, 2013, the parties entered into another agreement called the J.C. Penney Statement of Work, wherein Speedeon would provide data to IDM for the IDM J.C. Penney Mover Program in exchange for payment.

Speedeon alleges it performed its obligations under the agreements and IDM made payments up until October of 2014, when IDM stopped making the required payments under the agreements.

Speedeon alleges Breach of Contract, Account Stated and Unjust Enrichment claims against IDM for its failure to make payments under the agreements.

On August 3, 2015, IDM filed its Motion to Dismiss for Lack of Personal Jurisdiction, contending that IDM, a Virginia based company, lacks contacts with the State of Ohio sufficient to subject IDM to personal jurisdiction in Ohio.  According to IDM, the only basis for jurisdiction in Ohio is the alleged contracts between Speedeon and IDM.  However, these contracts were not signed in Ohio, were not negotiated in Ohio and did not involve any business conducted in Ohio.  Furthermore, IDM has no property, business or employees located in Ohio, nor does it advertise or sell any products in Ohio.

## LAW AND ANALYSIS

### Standard of Review

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the court applies a two-step inquiry when examining if it has personal jurisdiction over the parties.  "First, we must determine whether Ohio law authorizes jurisdiction.  If it does, we must determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment."

*Estate of Thomson ex rel. Estate of Rakestraw v. Toyota*, 545 F.3d 357, 361 (6th Cir. 2008). Where personal jurisdiction is challenged in a Rule 12(b)(2) motion, the plaintiff has the burden of establishing that personal jurisdiction exists. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir. 1974). However, the nature of plaintiff's burden changes depending on the manner in which the district court approaches the motion. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988). When a court approaches a motion to dismiss for lack of personal jurisdiction based solely on written materials and affidavits, "the burden on the plaintiff is relatively slight, . . . and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal[.]" *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012WL1066784, at *2 (N.D. Ohio Mar. 28, 2012) (quoting *Air Prods., & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Plaintiff need only establish jurisdictional claims with "reasonable particularity" and the pleadings and affidavits are construed in the light most favorable to plaintiff. *Id.* The burden is on the plaintiff, however, to establish that jurisdiction exists, and the plaintiff may not merely stand on his pleadings in the face of a properly supported motion for dismissal. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff must set forth specific facts showing that the court has jurisdiction. *Id.* Therefore, dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

**Personal Jurisdiction**

Plaintiff bears the burden of establishing the Court's personal jurisdiction over IDM by showing that it meets the requirements of both Ohio's long-arm statute and the limits of

the Constitutional Due Process Clause. *Id.* Ohio's long-arm statute does not extend to the constitutional limits of the Due Process Clause; therefore, this becomes a threshold issue to determine jurisdiction. *Calphalon Corp. V. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000).

**<u>Ohio's Long Arm Statute</u>**

Plaintiff alleges IDM transacted business in Ohio, subjecting it to personal jurisdiction in Ohio. Section (A)(1) of Ohio's long-arm statute reads:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> > (1) Transacting business in this state.

O.R.C. § 2307.382 (A)(1).

Given the "relatively slight" burden on Plaintiff to show personal jurisdiction and construing the pleadings and affidavits in Plaintiff's favor, the Court finds Plaintiff has established sufficient contacts with the State of Ohio satisfying Ohio's long-arm statute. The Ohio Supreme Court has held that to 'transact business' is "to prosecute negotiations; to carry on business; [or] to have dealings." *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 705-06 (N.D. Ohio 2006), citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990). Here, the parties offer opposing and contradictory affidavits, each attesting that the other initiated negotiations on a contract. However, when as here the Court relies solely on the pleadings and affidavits, it must construe them in favor of Plaintiff, therefore, the Court finds Plaintiff has shown IDM reached out to Ohio to negotiate a contract with an Ohio company. "If the non-resident reached out to the plaintiff in Ohio to create a business relationship, the non-resident transacted business in Ohio." *Dayton Superior*

4

*Corp. v. Yan,* 288 F.R.D. 151, 161 (S.D. Ohio 2012). "However, merely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute "transacting business." 'Rather, there must additionally be some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state.'" *Id* quoting *Shaker Construction Group, LLC v. Schilling,* No. 1:08cv278, 2008 WL 4346777, at *2 (S.D.Ohio Sep. 18, 2008).

The parties further acknowledge that the contracts resulted from back and forth negotiations via telephone and emails. While directing communications to an Ohio resident is not enough in and of itself to find personal jurisdiction, such communications concerning the negotiation of contracts is "prosecuting negotiations" under Ohio law and is another factor that supports a finding that the parties transacted business in Ohio.

IDM and Speedeon also entered into two contracts; the Home Depot Statement of Work and the JC Penney Statement of Work. Courts within this Circuit had held "'[t]ransacting business' subsumes the narrower act of contracting." *Stern's Dept's Stores, Inc. v. Herbert Mines Assoc.,* No. C–1–98–844, 1999 U.S.Dist. LEXIS 10805, at *15 (S.D.Ohio July 8, 1999) (citations omitted) (quoting *Douglas v. Modern Aero, Inc.,* 954 F.Supp. 1206, 1210 (N.D.Ohio 1997)). The Supreme Court of Ohio has held that transacting business "encompasses 'to carry on business,' and 'to have dealings,' and is broader ... than the word 'contract.' " *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235 (1994) (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear Inc.,* 53 Ohio St.3d 73 (1990)). Therefore, while the mere existence of a contract may not be enough to confer personal jurisdiction, a contract may qualify as transacting business under Ohio's long-arm statute, particularly when it

5

imposes continuing obligations on the parties affecting the State of Ohio.  The Home Depot Statement of Work and JC Penney Statement of Work required Speedeon to compile data on a regular basis from its place of business in Ohio and submit the data compilation to IDM for an agreed upon payment which was to be delivered to Ohio.  IDM's usage of the data under the terms of the agreements placed restrictions on the use of the data and contained additional obligations on the parties.  Also, the work under the contracts was performed in Ohio.

From approximately September of 2012 to October 2014, both parties complied with their respective obligations under the two Statements of Work with Speedeon collecting and submitting the required data and IDM submitting payments.  Given the continuing payment obligations, continued restrictions on the use of Speedeon data and other restrictions imposed under the contracts, coupled with its reaching out to an Ohio company and prosecution of negotiations with an Ohio company that ultimately resulted in two contracts with ongoing obligations, the Court finds IDM transacted business under Ohio's long-arm statute. Therefore, the Court finds Plaintiff has met its "slight" burden.

**<u>Due Process</u>**

If jurisdiction is proper under Ohio's long arm statute, the Court must next determine whether IDM's contacts with Ohio were sufficient under the Fourteenth Amendment Due Process Clause to allow the Court to exercise jurisdiction.  In order for personal jurisdiction to comply with due process, Defendants must have "minimum contacts" with the forum state "so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.' "  *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010). "Minimum contacts exist where a defendant's conduct and connection with the forum state are

such that he would reasonably anticipate being haled into court there." *Id.* (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two types of personal jurisdiction: 1) general jurisdiction, which requires "a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant," and 2) specific jurisdiction, "which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum." *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 149 (6th Cir.1997).

The Sixth Circuit has concluded that "Ohio law does not appear to recognize general jurisdiction over non-resident defendants, but instead requires that the court find specific jurisdiction under one of the bases of jurisdiction listed in Ohio's long-arm statute." *Conn v. Zakharov,* 667 F.3d 705, 717 (6th Cir. 2012). Therefore, the Court will analyze whether it has personal jurisdiction over IDM under the specific jurisdiction prong of the due process inquiry.

The Sixth Circuit has articulated a three-part test for determining whether the exercise of specific personal jurisdiction comports with due process:

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Kerry Steel*, 106 F.3d at 150 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d

374, 381 (6th Cir.1968)).

**<u>Purposeful Availment</u>**

The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random, fortuitous, or attenuated contacts." *MMK Group, LLC v. SheShells Co., LLC*, 591 F.Supp.2d 944, 956 (N.D. Ohio 2008).   In *Burnshire Development v. Cliffs Reduced Iron Corp.,* 198 Fed. App'x. 425, 432 (6th Cir. 2006) the Court, in an unpublished decision held, "Based on the identical standards used to interpret the "transacting any business" standard and the "purposeful availment" and "substantial connections with the forum state" prongs of our *Southern Machines* test, we now expressly adopt *Brunner's* suggestion that "transacting any business" is coextensive with the Due Process clause."  See also  *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 164 (S.D. Ohio 2012) ("The purposeful availment prong of the constitutional analysis is coextensive with the "transacting any business" standard of Ohio's Long–Arm Statute. (Internal citation omitted). Identical standards are used to interpret the "transacting any business" standard of Ohio's Long–Arm Statute and the "purposeful availment" prong of the constitutional standard.") Here, Defendant reached out to Ohio, conducted negotiations resulting in two contracts with an Ohio resident that contained continuing obligations, including restrictions and obligations concerning the use of the data and payment obligations.   Thus, where the defendant  has "created 'continuing obligations' between himself and residents of the forum, *Travelers Health Assn. v. Virginia,* 339 U.S., at 648, 70 S.Ct., at 929, he manifestly has availed himself of the privilege of conducting business there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Therefore, for the same reasons the Court found Defendant transacted business in

8

Ohio, it finds Defendant purposefully availed itself of acting in the forum state or causing a consequence in the forum state.

**Arising From**

Under the second prong, where "a defendant's contacts with the forum state are related to the operative facts of the controversy, the action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). Plaintiff's Complaint alleges claims for Breach of Contracts. As previously stated, "if the cause of action is for breach of that contract [with an Ohio resident] ... then the cause of action naturally arises from the defendant's activities in Ohio."*ALTA Analytics, Inc. v. Muuss*, 75 F. Supp. 2d 773, 779 (S.D. Ohio 1999), quoting *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir.1998). Therefore, IDM's actions arise out of his contact with the State of Ohio.

**Substantial Connection**

Under the final prong of the specific jurisdiction analysis the Court must determine whether "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Kerry Steel*, 106 F.3d at 150. According to Sixth Circuit precedent, "where the first two prongs are satisfied, only the unusual case will not meet this third criterion." *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998). To determine reasonableness, the Court must balance three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 223 (6th Cir. 2006) (internal citations omitted). Here, while unquestionably defending itself in Ohio will be

9

burdensome on IDM, it is not unduly so.

Furthermore, Ohio has a strong  interest in ensuring the enforcement of its laws and enforcing contracts.   The Court finds this is not that rare instance where Defendant's contacts with Ohio are so minimal that such burden outweighs the interests of Ohio.  Lastly, Plaintiff's are entitled to pursue relief from an out-of state company that sought Plaintiff's services, negotiated for those services and entered into two contracts requiring frequent communications back and forth and frequent exchange of the Ohio-produced data collection for payment over the course of two years.   Based on all of the foregoing, IDM's Motion to Dismiss for Lack of Personal Jurisdiction is denied.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  February 12, 2016

10