# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| SPEEDEON DATA, LLC, | ) | CASE NO.1:15CV1272 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| INTEGRATED DIRECT MARKETING | ) | OPINION AND ORDER |
| LLC. | ) | |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Plaintiff Speedeon Data LLC.'s Motion for Summary

Judgment. (ECF # 39). For the following reasons, the Court grants, in part, Plaintiff's Motion.

According to Plaintiff's Complaint, Speedeon Data, LLC ("Speedeon") is an Ohio based

company that collects and processes consumer data for use in direct marketing programs.

Defendant Integrated Direct Marketing, LLC. ("IDM") is a Connecticut limited liability

company with its principal place of business in Reston, Virginia.  IDM collects and processes

consumer data.  Speedeon alleges IDM collects data from other data collection sources such as

Speedeon, aggregates the third party data and sells it to retailers.

On August of 2011, an employee of Home Depot contacted IDM requesting IDM obtain

consumer data from Speedeon, process it and provide it to Home Depot.  IDM contacted

Speedeon and requested Speedeon's data collection services.  On September 25, 2012, Speedeon and IDM entered into an agreement referred to as the Home Depot Statement of Work, wherein Speedeon agreed to provide data to IDM for its Home Depot Mover Program in exchange for payment for such data.  Later, on July 2, 2013, the parties entered into another agreement called the J.C. Penney Statement of Work, wherein Speedeon  would provide data to IDM for the IDM J.C. Penney Mover Program in exchange for payment.

Speedeon alleges it performed its obligations under the agreements and IDM made payments up until October of 2014, when IDM stopped making the required payments under the agreements.

Speedeon alleges two Breach of Contract claims, an Account Stated claim and an Unjust Enrichment claim against IDM for its failure to make payments under the agreements.

On June 28, 2016, Plaintiff moved for summary judgment, contending there are no genuine issues of material fact on its claims and it is entitled to judgment as a matter of law.   In its Answer, Defendant admits the following:  Plaintiff submitted invoices totaling $180,929.48 for work performed pursuant to its contracts with Defendant dating from October 31, 2014 through April 30, 2015.  Defendant admits it received the data from Plaintiff as required under the contracts and received the invoices.  Defendant further admits it has not paid the invoices despite Plaintiff's demands for payment.

In its Opposition to Summary Judgment, Defendant argues summary judgment is inappropriate because Plaintiff spoliated evidence; breached a non-disclosure agreement; gave conflicting accounts of its preservation of electronically stored information; admitted possessing Defendant's confidential information sent it by a disgruntled former employee of Defendant; and

2

attempted to start a competitive business with Defendant's former employee with the intent of stealing Defendant's clients.

According to Defendant, around the time of the unpaid invoices, Defendant sued its former employee, Drew May, for theft of Defendant's internal documents.  It was during this time that Plaintiff was working directly with May on a new enterprise intended to compete with Defendant in Little Rock, Arkansas.  Defendant accuses Plaintiff of conspiring with May to steal Defendant's clients in Little Rock.

Defendant further alleges that as part of their business relationship, Plaintiff and Defendant also entered into a confidentiality agreement prohibiting disclosure of either's confidential information.  In January of 2014, May sent Plaintiff Defendant's pricing information.  May was still an employee of Defendant at this time.   May was fired by Defendant in March of 2014.  Ten days thereafter, May and Plaintiff entered into a non-disclosure agreement and on August 12, 2014, May sent Speedeon a spreadsheet containing Defendant's budget information.

Defendant requested ESI discovery from Plaintiff but initially received only 60 emails. Later, it received an additional 800 emails just weeks before the deposition of Plaintiff's owner, Gerard Daher.  When asked about the emails Daher testified that Plaintiff deletes emails in the normal course of business based solely on their size and admits some relevant emails may have been purged.  Plaintiff's Rule 30(b)(6) witness testified that emails are saved indefinitely per Plaintiff's retention policy.   Defendant also complains that the 30(b)(6) deponent was unable to answer many questions within his supposed purview.

Defendant bases its opposition on its affirmative defense of setoff, contending Plaintiff

engaged in tortious conduct by interfering with Defendant's business relationships and obtaining confidential information. The extent of Plaintiff's misappropriation is unknown due to the spoliation of emails relevant to Plaintiff's alleged misconduct. By obtaining Defendant's confidential information, Defendant alleges Plaintiff breached the parties' confidentiality agreement. Defendant further argues that Plaintiff's admitted attempt to steal Defendants's Little Rock business constitutes tortious interference with prospective business relationships.

Lastly, Plaintiff's destruction of relevant emails spoliated evidence Plaintiff was obligated to preserve. For these reasons, Defendant argues summary judgment must be denied.

## II. LAW AND ANALYSIS

### A) Standard of Review

Summary Judgment should be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R.Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v Catrett,* 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. V. Espy,* 39 F. 3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but most come forward with some significant probative evidence to support its claim. *Celotex,* 477

U.S. at 324; *Lansing dairy*, 39 F.3d at 1347.

 The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986) (emphasis in original); *accord Leadbetter v Gilley,* 385 F. 3d 683, 689-90 (6th Cir. 2003).  A fact is only material if its resolution "might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.

 The Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact.  *Betkerur v. Aultman Hospital Ass'n.,* 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees,* 980 F. 2d 399, 404-06 (6th Cir. 1992).  The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson*, 477 U.S. at 249-50; and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment.  *Celotex*, 477 U.S. at 323.  Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a mater of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

 This case was first filed in June of 2015.  After ruling on the Motion to Dismiss for Lack of Jurisdiction the parties requested six months of discovery.  The Court gave the parties three months to complete discovery.  At the close of discovery the parties jointly moved for an additional seventeen days of discovery which the Court granted.  On June 28, 2016, Plaintiff

filed its Motion for Summary Judgment.  On the date discovery was to close, Defendant moved for an additional forty-five days to complete discovery and requested an extension of time to file an opposition to Plaintiff's dispositive motion which the Court granted.   Following discovery disputes by the parties that were referred to a Magistrate Judge, Defendant filed its Opposition brief to Plaintiff's Motion for Summary Judgment.  In its Opposition, Defendant requested per Fed. R. Civ. P. 56(d) additional discovery, alleging Plaintiff spoliated evidence by destroying emails, gave conflicting testimony on it ESI retention policy, admitted it was subject to a Confidentiality Agreement with Defendant and possessed confidential information of Defendant and due to the above, is not entitled to summary judgment.  Defendant requested additional discovery to explore the email issues and further alleged that Plaintiff produced at the last minute over 800 emails that Defendant needed additional time to review  and prepare a supplemental filing in opposition to Plaintiff's Motion for Summary Judgment.  The Court granted this Motion, extended discovery, allowing Defendant to further explore the deleted email issue and allowed Defendant to file another opposition brief by November 30, 2016, which Defendant subsequently filed.  In its second opposition brief Defendant again asks for additional discovery to further explore the deleted emails of Plaintiff.

Under Ohio law "[a] breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the nonbreaching party performed its contractual obligations; the other party failed to fulfill its contractual obligations without legal excuse; and the nonbreaching party suffered damages as a result of the breach."*Transportation Ins. Co. v. Busy Beaver Bldg. Centers, Inc.,* 969 F. Supp. 2d 875, 885–86 (S.D. Ohio 2013), quoting  *Spectrum Benefit Options, Inc. v. Med. Mut. of Ohio,* 174 Ohio App.3d 29, 880 N.E.2d 926, 934 (2007).

Having reviewed the Motion for Summary Judgment, Opposition brief, Reply and supporting materials, the Court finds no genuine issues of fact on Plaintiff's claims for Breach of Contract.  In its Answer at paragraphs 8 and 9, Defendant admits it was a party to two written agreements with Plaintiff wherein Plaintiff agreed to provide consumer data to Defendant in exchange for payment.  At paragraphs 10 and 11 of it Answer, Defendant admits Plaintiff performed its contractual obligations under the Agreements to provide the contracted for data. At paragraphs 13-15 of its Answer, Defendant admits Plaintiff invoiced Defendant for data provided per the Agreements in the amount of $180,929.48, admits it was required to pay the Invoices within seventy-five days of the date of Invoice and admits it did not pay the Invoices. These facts are supported by the declaration of Plaintiff's owner Daher, who attests that the parties were signatories to two Agreements, the Home Depot and J.C. Penney Statements of Work and that under the Agreements, Plaintiff was to provide upon request consumer data to Defendant in exchange for payment.  Plaintiff provided the consumer data and Defendant failed to pay for the invoiced data from October 2014-April 2015.   As a result, Plaintiff has been injured in the amount of $180,929.48, plus interest.  (Daher Decl. ¶ 5-12).

Defendant offers no evidence to contradict the existence of the contracts.  Defendant does not dispute that Plaintiff provided the contractually obligated consumer data and does not dispute that Plaintiff timely invoiced them.   Defendant does not dispute it has not paid the invoices since October 2014 and that the total value of the unpaid invoices is $180,929.48, plus interest.

Defendant's defense of this case arises from its contention that it is owed money by Plaintiff for Plaintiff's alleged tortious misconduct relating to its dealings with Defendant's former employee May.  Defendant contends it is entitled to set off the monies it owes under the

contracts with the monies it claims Plaintiff owes Defendant for Plaintiff's tortious conduct. However, Defendant has not asserted any counterclaims upon which it may plausibly assert it is owed money.   Much of Defendant's Opposition brief is spent outlining the tortious conduct Plaintiff allegedly engaged in and Defendant's Opposition brief argues the elements needed to establish the torts arising out of Plaintiff's misdeeds.  But Defendant has not pled any counterclaims against Plaintiff despite threatening to do so for over a year.  In fact, Defendant has known of and represented to the Court its intent to file counterclaims as far back as the CMC in March of 2016, yet it has failed to do so.  In the absence of any claims against Plaintiff, Defendant cannot argue it is entitled to a set off.

Neither does Defendant explain how further discovery directed towards Plaintiff's alleged destruction of emails relates to its ability to present facts essential to justify its opposition to Plaintiff's Motion.  Instead, the emails and Defendant's Rule 56(d) declaration of counsel are directed to how the discovery may support Defendant's as yet unpled counterclaims.  Defendant offers no explanation why any further discovery may support its defense to Plaintiff's Breach of Contract claims.

Furthermore, Defendant does not point the Court to any provision of the Statements of Work that permitted it to withhold payment.  The Statements of Work allowed Defendant to cancel upon 30 days written notice.  Defendant never gave such notice.  If it knew of Plaintiff's improper conduct during the contract, it could have terminated the Agreements by notice in writing.  Instead, Defendant continued to receive Plaintiff's consumer data without payment.

Lastly, Defendant argues it needs additional discovery because it has not had the opportunity to fully explore the deleted email issue.   At the March 2016 Case Management

8

Conference the Court set a discovery cut-off date of June 24, 2016.  The parties had requested until September 2016.  However, as discovery progressed, the Court granted multiple extensions of discovery up to and including November 30, 2016 with the caveat that no further extensions would be granted.  Now Defendant contends it needs additional discovery to further flesh out Plaintiff's alleged destruction of emails.   The Court had already granted several extensions for this very purpose and warned Defendant no further extensions would be granted.  Defendant was given fully two months more discovery than it initially requested and has not pursued any counterclaims despite ample opportunity to do so.  In light of the numerous extensions given Defendant, the Court denies Defendant's Motion for Additional Discovery.  In fact, Defendant has not attested how additional discovery will enable him to defend Plaintiff's Breach of Contract claim.  All knowledge relevant to Plaintiff's claim is presumably already with Defendant as a party to the Statements of Work.   Defendant presumably knows why it did not pay for the consumer data as required by the contract.  Yet, it only seeks additional discovery as it relates to their unfiled counterclaims.  This further militates against granting Defendant's Rule 56(d) Motion.

Because Defendant has offered no evidence opposing Plaintiff's Motion for Suumary Judgment on its Breach of Contract claims and Plaintiff has proven by undisputed evidence it has been injured by Defendant's Breach, the Court grants Plaintiff's Motion for Summary Judgment on its Breach of Contract claims as there are no genuine issues of material fact and Plaintiff is entitled to summary judgment as a matter of law.

Plaintiff further moves for summary judgment on its Account Stated claim.  An account stated claim is  "an agreed balance of accounts, expressed or implied, after admission of certain

sums due or an adjustment of the accounts between the parties, striking a balance, and assent, express or implied." *Hamilton Farm Bureau Co-op., Inc. v. Ridgway Hatcheries Inc.,* No. 9-03-45 2004 WL 326668, *3 (Ohio App. 3rd Dist Feb. 2, 2004). *Creditrust Corp. v. Richard* (July 7, 2000), 2d Dist. No. 99-CA-94, unreported, 2000 WL 896265, *5. "Account stated" has also been defined as "an agreement between parties, express or implied, based upon an account balanced and rendered, and as an agreement between parties between whom there has been an account." *Id.* "An account stated is based upon assent, either express or implied, by the parties that the balance is correct." *Id.*

"An account rendered by one person to another and not objected to by the latter within a reasonable time becomes an account stated." *Creditrust Corp.,* 2000 WL 896265 at *5. "It becomes the duty of the one to whom the account is thus rendered to examine the same within a reasonable time and object if he or she disputes its correctness." *Id.*

Here, Plaintiff has attached to the Complaint its invoices and account statements showing the balances owed for the data provided. Defendant admits in its Answer it was required to pay the invoices and did not. (Answer para. 10-15). Plaintiff also submits the declaration of Daher attesting to the fact that Plaintiff has not been paid per the contract the invoiced amount.

Defendant offers no evidence opposing the Account Stated claims, that the accounts and invoices were provided Defendant or that Defendant does not owe the invoiced amounts. In the absence of any genuine issues of material fact, the Court grants summary judgment for Plaintiff and against Defendant on Plaintiff's claim for an Account Stated.

Under applicable law, because the Court has found that Plaintiff's claims were governed by contracts, the Court denies Plaintiff's claim for unjust enrichment.

Therefore, for the foregoing reasons, the Court grants, in part, Plaintiff's Motion for Summary Judgment and grants Plaintiff's Breach of Contract and Account Stated claims in the amount of $180,929.48 plus interest.  Plaintiff is not entitled to double recovery.  The Court denies Plaintiff's Motion for Summary Judgment on its Unjust Enrichment claim because a contract governed the parties relationship.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  March 17, 2017

11